# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: NATIONAL HOCKEY LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION<br><br>*This Document Relates to:*<br><br>LaCouture et. al v. National Hockey League, No. 14-cv-3234 (SRN/BRT) (transferor case no. 1:14-cv-02531 (S.D.N.Y.)), and<br><br>Paul Montador, Executor and Estate Trustee of the Estate of Steven R. Montador, deceased, v. National Hockey League & National Hockey League Board of Governors, No. 16-cv-69 (SRN/BRT) (transferor case no. 1:15-cv-10989 (N.D. Ill.)) | MDL No. 14-2551 (SRN/BRT)<br><br>**ORDER ON SUGGESTION OF REMAND** |

Richard R. Gordon, Gordon Law Offices, Ltd., 111 W. Washington Street, Suite 1240, Chicago, IL 60602; Thomas A. Demetrio, and William T. Gibbs, Corboy & Demetrio, 33 N. Dearborn Suite 2100, Chicago, IL 60602, for Plaintiff Paul Montador, Executor and Estate Trustee of the Estate of Steven R. Montador.

Plaintiff Michael Peluso, *pro se*.

Aaron D. Van Oort, Daniel J. Connolly, Joseph M. Price, and Linda S. Svitak, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402; John H. Beisner, Jessica D. Miller, and Geoffrey M. Wyatt, Skadden, Arps, Slate, Meagher & Flom LLP, 1440 New York Avenue N.W., Washington D.C. 20005; Adam M. Lupion and Joseph Baumgarten, Proskauer Rose, LLP, Eleven Times Square, New York, NY 10036; Matthew Michael Martino, Michael H. Menitove, and Shepard Goldfein, Skadden, Arps, Meagher & Flom LLP, Four Times Square, New York, NY 10036, for Defendants National Hockey League and National Hockey League Board of Governors.

SUSAN RICHARD NELSON, United States District Judge

Pursuant to Rule 10.1(b)(i) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation ("JPML"), Defendant the National Hockey League ("NHL") has moved the Court for an order suggesting that the JPML remand the *Peluso* case (14-CV-3234) to its transferor court, the Southern District of New York, and the *Montador* case (16-CV-69) to its transferor court, the Northern District of Illinois. (*See* Mot. for Suggestion of Remand [Doc. No. 1131].) Plaintiff Montador agrees with the NHL that the Court should suggest remand to the JPML but disagrees with some of the NHL's factual assertions contained in the motion. (*See* Montador Response Br. [16-CV-69 Doc. No. 30] at 1].) Plaintiff Peluso was served with the motion papers and briefing, but has not submitted any position on the motion. (*See* Meet & Confer Statement [Doc. No. 1134] at 1; Certificate of Service [Doc. No. 1149].)

The Court, having carefully reviewed the NHL's motion and the files, pleadings, and proceedings herein, agrees that a Suggestion of Remand is appropriate for the *Peluso* and *Montador* cases. The Court will submit this Suggestion of Remand to the JPML recommending that the Panel remand Case Nos. 16-CV-69 and 14-CV-3234 to the indicated courts of proper jurisdiction (the "Transferor Courts").

This Suggestion of Remand describes the proceedings that have taken place to date in MDL 2551 and provides information of potential assistance to the Transferor Courts. A copy of this Order, along with the case files and materials, will also be available to the Transferor Courts.

## I. INTRODUCTION

On August 19, 2014, the JPML designated this Court as the transferee court for federal cases involving allegations against the NHL related to injuries resulting from the long-term effects of concussions while playing professional hockey in the NHL. (*See* Transfer Order [Doc. No. 1] at 1.) The JPML transferred three cases to this Court, and also noted that two related actions would be considered tag-along actions. (*Id.*) Eventually, 139 cases were transferred to or filed directly in MDL 2551. The vast majority of the cases have settled. These are the only two cases that remain pending before this Court.

## II. SUGGESTION OF REMAND

In its order creating MDL 2551, the JPML stated that "centralization [of the pending actions] in the District of Minnesota will . . . eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." (*Id.*) These stated purposes of MDL 2551 have been accomplished.

Accordingly, based on the parties' motions and the Court's own assessment of the current status of MDL 2551, the Court is satisfied that MDL 2551 has successfully run its course. Therefore, pursuant to JPML Rule of Procedure 10.1(b)(i), the Court submits this Suggestion of Remand to facilitate the prompt remand of cases 16-CV-69 and 14-CV-3234 by the JPML to their Transferor Courts for further proceedings. This Suggestion of Remand and Order, along with any supplements and amendments, shall be filed in all remaining unresolved cases for which the Panel issues an Order for Remand.

## III. OVERVIEW OF MDL 2551 PROCEEDINGS

The following is a brief summary of MDL 2551's proceedings, from initial consolidation to case resolution efforts.

### A. Parties, Representative Counsel, and Leadership

Plaintiffs are retired NHL hockey players and/or their representative claimants. (*See* Amended Master Compl. [Doc. No. 615] at 1.) Plaintiffs are represented by co-lead Counsel, Liaison Counsel, and the Plaintiffs' Executive Committee. (*See* Order granting Leadership Structure [Doc. No. 18]; Add'l Appointment to Exec. Council [Doc. Nos. 134 & 545].) Defendants—the NHL and NHL Board of Governors—are also represented.

**Plaintiffs' Co-Lead Counsel:**
Stuart Davidson & Mark Dearman
*Robbins Geller Rudman & Dowd LLP*

Stephen Grygiel & William Sinclair
*Silverman, Thompson, Slutkin & White, LLC*

Charles Zimmerman (now deceased) & Brian Gudmundson
*Zimmerman Reed, PLLP*

**Plaintiffs' Liaison Counsel:**
Lewis Remele & Jeffrey Klobuchar
*Bassford Remele*

**Plaintiffs' Executive Committee:**
Jeffrey Bores & Bryan Bleichner
*Chestnut Cambronne PA*

Thomas Demetrio & William Gibbs
*Corboy & Demetrio*

Brian Penny & Mark Goldman
*Goldman Scarlato & Penny, PC*

Daniel Gustafson
*Gustafson Gluek, PLLC*

Vincent Esades & James Anderson
*Heins Mills & Olson, PLC*

David Levine
*The Levine Law Firm P.C.*

Thomas Byrne & Mel Owens
*Namanny, Bryne & Owens, APC*

Michael Cashman & Richard Hagstrom
*Zelle Hofmann Voelbel & Mason LLP*

Robert Shelquist
*Lockridge Grindal Nauen, PLLP*

Shawn Raiter
*Larson King, LLP*

Charles LaDuca
*Cuneo Gilbert & La Duca, LLP*

**Defendants' Co-Lead Counsel:**
Aaron Van Oort, Daniel Connolly, Joseph Price & Linda Svitak
*Faegre Baker Daniels LLP*

John Beisner, Jessica Miller & Geoffrey Wyatt
*Skadden Arps Slade Meagher & Flom LLP (D.C.)*

Matthew Martino, Michael Menitove & Shepard Goldfein
*Skadden Arps Slade Meagher & Flom LLP (NY)*

Adam M. Lupion & Joseph Baumgarten
*Proskauer Rose, LLP*

### B. Initial Orders, Pretrial Orders, Status Conferences, and Protocols

In an order dated September 23, 2014—after an initial case management conference—the Court directed the parties to, among other things, (1) file a master consolidated complaint by October 18, 2014; (2) negotiate a proposed case management order, protective order, protocol for preservation, collection, and production of electronic discovery; (3) negotiate the quantity and nature of written discovery as well as the number and length of depositions (including Rule 30(b)(6) and expert witness depositions); (4) negotiate the timing and briefing schedule for a Class Certification Motion; (5) negotiate any issues regarding required medical examinations; and (6) discuss proposals for mediation. (*See* PTO 3 [Doc. No. 21] at 1–4.) The Court also scheduled monthly status conferences. (*Id.* at 5–6.)

Following submissions by the parties, the Court issued several orders regarding pretrial discovery as it related to depositions, (*see* PTO 6 [Doc. No. 67]; PTO 11 [Doc. No 98]; Amended PTO 6 [Doc. No. 209]), production of documents and electronically stored information ("ESI"), (*see* PTO 7 [Doc. No. 68]), anticipated class certification motions, (*see* PTO 8 [Doc. No. 69]), and privilege protocol, (*see* PTO 9 [Doc. No. 71]). On October 20, 2014, Plaintiffs filed a Master Administrative Long-Form & Class Action Complaint (*see* Master Compl. [Doc. No. 28]), which was subsequently amended, (*see* Amended Master Compl. [Doc. No. 615].) In October 2016, the Court granted Plaintiffs' motion to add a new class representative to their suit. (*See* Order granting Pl. Mot. to add Class Rep. [Doc. No. 613] at 8.)

Throughout the litigation, the Court participated in monthly status conferences and issued scheduling and discovery orders related to party motions. (*See, e.g.*, Status Conf. & Mot. Schedules; Orders re: Conf. Notes [Doc Nos. 66–69, 81, 215, 476, 555, 617, 724, 905].)

### C. Protective Order

Following party submissions, the Court entered a Protective Order (*see* Protective Order [Doc. No. 70]) setting forth procedures for the designation, challenge of designation, determination, treatment, handling and use of categories of information and documents defined in the Order as "PROTECTED DOCUMENT" or "PROTECTED DOCUMENT – ATTORNEYS' EYES ONLY."

## IV. DISCOVERY

Discovery between the parties on common issues of fact—but not case-specific issues—has been extensive. The NHL asserts—and Plaintiffs do not dispute—that for more than three years, the parties conducted discovery "on common factual issues, including claims related to the alleged role of violence in the NHL, the NHL's purported duty to NHL players and the adequacy of the NHL's policies and procedures designed to inform and protect players from head injuries." (Pl. Mem. in Support of Mot. to Suggest Remand [Doc. No. 1133] at 2.) To that end, over 320,000 documents were produced by the NHL, both parties answered numerous interrogatories and requests for admission, and the parties conducted 56 depositions. (*Id.* at 2–3.) Additionally, the named Plaintiffs submitted to extensive medical examinations. Plaintiffs and the NHL also obtained discovery and depositions from relevant third parties, including NHL member clubs, the

NHL Players' Association and medical professionals advising the Association, as well as third-party medical institutions and affiliated researchers. (*Id.* at 3.) After litigating the issue, Plaintiffs were also permitted to depose the NHL Commissioner Gary Bettman. (*See, e.g.*, Informal Mot. for Protective Order by NHL [Doc. No. 150] (arguing for protective order delaying deposition of Bettman); Pl. Opp'n to NHL Informal Mot. for Protective Order [Doc. No. 128] (arguing against the NHL's motions); Order Granting in Part and Denying in Part NHL's Mot. (Pretrial Order 14) [Doc. No. 151] at 7 (permitting Bettman deposition following Bettman-specific discovery disclosures).)

The parties also extensively litigated issues of confidentiality, medical examinations, and third-party discovery. With respect to confidentiality, Plaintiffs requested numerous medical documents from United States Hockey Clubs concerning head trauma and brain disease, as well as studies or analyses of the incidence of players' brain disease, and communications between U.S. Clubs and the NHL. (*See* Order on Subpoenas against U.S. Clubs [Doc. No. 196] at 5.) The U.S. Clubs objected on grounds of medical privacy and burden. (*Id.* at 6.) The parties disagreed over the need to redact certain personal identifying information found in databases maintained by the U.S. Clubs. (*Id.* at 7.) The Court ultimately granted discovery of the medical records from the U.S. Clubs, conditioned on several "layers of protection in order to safeguard and respect its confidentiality." (*Id.* at 24.) Importantly, the Court required that (1) disclosure comply with the Court's prior Amended Protective Order (Doc. No. 140); (2) all individual player-identifying information (and other provisions) be removed; and (3) no party may reverse-engineer or reidentify the player to which particular data is associated. (*Id.* at 24–25.)

7

The Court addressed independent medical examinations several times. In early 2016, the NHL moved to compel independent medical examinations of named Plaintiffs. (*See* NHL Mot. to Compel IME's of Plaintiffs [Doc. No. 400].) The NHL requested that Plaintiffs submit to independent medical examinations including MRIs, bloodwork, neurological examinations, neuropsychological examination, psychiatric testing and, for one plaintiff, a PET scan. (*See* NHL Mem. in Support of Mot. to Compel IMEs [Doc. No. 402] at 33.) Magistrate Judge Mayeron granted the NHL's motion, but in order to avoid duplicative examinations or future requests, the magistrate judge ordered that the examinations not occur until after the Plaintiffs' expert finished his own examinations of the Plaintiffs. (*See* Order Granting in Part and Denying in Part Mot. to Compel IMEs [Doc. No. 437] at 1, 5.)

In addition to the Plaintiffs' own medical examinations, Plaintiffs sought medical examination records from Chubb Insurance ("Chubb"), a non-party that provided workers' compensation benefits for the National Hockey League Clubs. (*See* Order Granting in Part and Denying Part Motion to Enforce Subpoena against Chubb (henceforth, "Chubb Order") [Doc. No. 556] at 3.) The Court ordered Chubb to produce "anonymized versions of the [independent medical examination's] in Chubb's possession, pursuant to the Protective Order in place, without prior notice to the non-party NHL retiree players before the records are produced . . . ." (*Id.* at 8.)

Third-party discovery also occurred throughout the litigation. As noted above, Plaintiffs sought and received anonymized independent medical examination records from Chubb (*See* Chubb Order [Doc. No. 556].) Additionally, the NHL asked the Court to

compel the Boston University Center for the Study of Traumatic Encephalopathy ("BU CTE Center") [Doc. No. 666] to provide, among other more specific requests, "[a]ll documents related to sub-concussive head injuries, concussions, brain injuries, post-concussion syndrome, second-impact syndrome or long-term neurological problems, including CTE, for hockey players generally or NHL players specifically." (*See* Order Granting in Part and Denying in Part NHL Mot. to Compel ("BU Discovery Order") [Doc. No. 731] at 6.)[1] The Court denied the majority of the NHL's request, finding that the burden of production far outweighed the need for such voluminous information, but granted the request with respect to (1) data pertaining to any of the former NHL players for whom medical authorizations were provided, and (2) any statements that BU issued to the press or researchers regarding research involving NHL donors. (*Id.* at 28–29.)

The NHL also sought discovery from CLS Strategies ("CLS"), a consulting firm hired by the law firms representing Plaintiffs. (*See* Order granting CLS Mot. to Quash Subpoena [Doc. No. 550] at 3.) After learning about CLS during discovery, the NHL sought—among other things—disclosure of communications between CLS and each of the named Plaintiffs, documents related to specific articles published in various newspapers, communications with members of the media relating to head impacts in professional hockey or other sports, and communications with members of the media relating to litigation against the NHL regarding head impacts. (*Id.* at 5.) CLS sought to quash the

---

[1] The BU CTE Center maintains a brain bank of approximately 400 donated human brains and spinal cord tissue, studied by researchers to understand the impact of trauma on the human nervous system. (BU Discovery Order [Doc. No. 731] at 4.) Other medical research groups have relied on the BU CTE Center's work. (*Id.* at 4 n.1.)

subpoena on relevance and burden grounds, and pursuant to attorney-client privilege and word product protections. (*Id.*) The Court granted the motion to quash, concluding that the requested discovery was not relevant to class-certification motions that were anticipated at the time the subpoena was issued, and that the request was overbroad and unduly burdensome. (*Id.* at 8, 10, 11.)

On an international scale, Plaintiffs moved the Court to issue letters rogatory to the appropriate Canadian judicial authorities in order to obtain discovery from Canadian hockey clubs. (*See* Pl. Mot. for Issuance of Letters Rogatory [Doc. No. 244].) The Court granted that request. (*See* Order Granting Mot. for Letters Rogatory [Doc. No. 260].)

## V. KEY RULINGS

The Court issued numerous rulings throughout the course of MDL 2551. Three require some discussion: (1) the NHL's motion to dismiss based on labor law preemption; (2) the NHL's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b); and (3) Plaintiffs' motion for class certification.

### A. NHL Motions to Dismiss

The NHL filed two motions to dismiss Plaintiff's master complaint. The first was based on labor law preemption. (*See* Mot. to Dismiss based on Labor Law Preemption [Doc. No. 38].) The second was based on Fed. R. Civ. P. 12(b)(6) and 9(b). (*See* Mot. to Dismiss based on Fed. R. Civ. P. 12(b(6) & 9(b) [Doc. No. 43].)

The Court first addressed the NHL's motion based on Rule 12(b)(6) and 9(b). The NHL sought dismissal on three separate grounds: (1) Plaintiffs' claims were time-barred; (2) Plaintiffs' fraud-based claims were not pled with particularity; and (3) Plaintiffs'

10

medical monitoring claims were noncognizable as stand-alone claims under the applicable law. (Order on Fed. R. Civ. P. 12(b)(6) & 9(b) [Doc. No 126] at 8–9.) The Court denied the motion because it could not determine, from the face of the Master Complaint, when Plaintiffs' causes of action accrued and, therefore, whether those claims were barred by the applicable statute of limitations. (*See id.* at 13, 33.) In particular, the Court explained that when the alleged injuries (e.g., "an increased risk of developing serious latent neurodegenerative disorders and diseases" and "latent or manifest neuro-degenerative disorders and diseases") "occurred" or "resulted," and when Plaintiffs discovered or should have discovered the link between such injuries and the increased risk of developing neurodegenerative disorders, were matters that were proper subjects of discovery. (*Id.* at 13–14.) With respect to the particularity and medical monitoring arguments, the Court held that Plaintiffs' fraud-based claims were adequately pled and that the record—at the time—was insufficient to determine which jurisdictions' laws applied. (*Id.* at 9.)

The Court also denied the NHL's motion to dismiss based on labor law preemption. (Order on Labor Law Preemption Mot. to Dismiss [Doc. No. 486] at 3–4.) The NHL argued that Plaintiffs' claims were preempted by section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a) (2012), because of the history of collective bargaining between the players and the NHL club teams. (*See* Order on Labor Law Preemption Mot. to Dismiss [Doc. No. 486] at 3, 11.) The Court disagreed, holding that Plaintiffs' claims did not arise out of any duties associated with a collective bargaining agreement ("CBA"), (*id.* at 27), and were not inextricably intertwined with a CBA such that they would be preempted by the LMRA, (*id.* at 32.)

### B. Plaintiffs' Motion for Class Certification

Plaintiffs sought Fed. R. Civ. P. 23(b)(2) class certification for two distinct classes of NHL players. Class one included all "living retired NHL hockey players" and sought medical monitoring relief for each member of the class. (Order denying Class Cert. [Doc. No 980] at 17.) Class two included all "retired NHL hockey players (or representative claimants if they are deceased) who have been clinically diagnosed with a NDDC." (*Id.*)

After determining that Plaintiffs' class certification was more properly analyzed under Rule 23(b)(3)—due to the monetary nature of the relief sought—the Court denied Plaintiffs' certification request because it held that individual legal issues predominated over cohesive claims such that a class action was not the appropriate vehicle for the case. (*Id.* at 21.) Specifically, the Court held that due to the varying array of teams to which each plaintiff belonged—and the varying geographic locations where each plaintiff competed in the NHL—there were no common legal issues predominating because the law of each plaintiffs' home state (or place where they competed frequently) would likely apply to their individual claims, and each state's law on medical monitoring varied to the point where there were no predominating legal questions suitable for class resolution. (*Id.* at 27–45.) Accordingly, the Court denied class certification.

## VI. CASE RESOLUTION EFFORTS

In November 2018, the NHL and numerous plaintiffs reached a tentative settlement agreement. The Court, in furtherance of that agreement, ordered the creation of a qualified settlement fund. (*See* Order establishing Qualified Settlement Fund [Doc. No. 1011].) Following settlement, the vast majority of plaintiffs stipulated to the dismissal of their

12

claims against the NHL with prejudice. (*See* Orders dismissing with Prejudice Claims of Multiple Plaintiffs [Doc. Nos. 1020, 1034, 1043, 1044, 1048–50, 1055, 1056, 1059, 1061–63, 1089–96, 1099–1101, 1106].) One case was dismissed without prejudice. (*See* Order dismissing without Prejudice Claims of Todd Elik [Doc. No. 1069].)

In recognition of the decreased number of plaintiffs, and in light of this motion, the JPML vacated one conditional transfer order following settlement and resolution of the majority of the plaintiffs' claims, noting that MDL 2551 "is significantly advanced" with "[c]ommon discovery [that has] proceeded . . . for several years." (*See* Order Vacating Conditional Transfer Order 6 [Doc. No. 1145] at 1.)

## VII. DOCUMENTS TO BE SENT TO THE TRANSFEROR COURTS

If the JPML issues an order remanding the above-cases to their respective transferor courts, the Clerk of Court will forward to said transferor courts, electronically where feasible, a copy of this Order, the docket sheet for MDL 2551, and the docket sheet for each case being remanded. The case-specific docket sheets will be deemed to include and incorporate all matters on the MDL 2551 docket sheet that refer or pertain to "all cases" or that otherwise refer or pertain to the particular case being remanded. In the event a party believes that the docket sheet for a particular case being remanded is incorrect or incomplete for any reason, a party to that case may, with notice to all other parties to the action, file with the transferor court a Designation Amending the Record. Upon receiving the Designation, the transferor court will make any needed changes to the docket.

The parties in each case shall meet and confer to decide on a joint designation of the contents of the record to be remanded, and file that designation with this Court.

## VIII. WHAT THE TRANSFEROR COURTS MUST DO

MDL 2551 was created to address common issues of fact inherent in the NHL concussion cases. It was not created to address case-specific questions of fact or conduct case-specific discovery. Accordingly, upon remand, the transferor courts should proceed with case-specific discovery, any related non-dispositive or dispositive motion practice, and, if necessary and appropriate, trial.

## IX. CONCLUSION

The Court believes that the purposes of MDL 2551 have been largely achieved, and that the coordination and completion of common discovery from the NHL and Plaintiffs has resulted in judicial efficiency and helped move the respective cases towards completion. Accordingly, this Court suggests to the JPML that it remand the above-captioned cases back to their transferor courts.

**IT IS SO ORDERED.**


Dated: October 18, 2019                     s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge